UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| MADELINE GREEN,                    § | |
|                 Plaintiff,     § | |
| § | |
| v.                                                       § | Case # 1:18-cv-1070-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
|                 Defendant.   § | |

## INTRODUCTION

Plaintiff Madeline Green ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act) and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 16. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 16) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on July 2, 2014, alleging disability beginning October 30, 2013 (the disability onset date). Transcript ("Tr.") Tr. 16, 184-194. Plaintiff alleged disability due to lumbar spine problems, sciatica, surgical hardware in her back, high blood pressure, and depression. Tr. 41, 184, 188, 209. Both applications were denied initially on May 4,

2015 (Tr. 16, 75-96), after which she requested an administrative hearing (Tr. 16, 121-125). On May 3, 2017 Administrative Law Judge Michael Carr (the "ALJ") presided over a video hearing from Alexandria, Virginia. Tr. 16, 35-70. Plaintiff appeared and testified at the hearing in Buffalo, New York, and was represented by Sandra Cassidy, an attorney. *Id*. Carly Coughlin, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on July 27, 2017, finding that Plaintiff was not disabled. Tr. 13-32. On August 2, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 27, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019;

2. The claimant engaged in substantial gainful activity during the following periods: between October 2016 through December 2016 (4th Quarter 2016) (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*);

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity;

4. The claimant has the following severe impairments: hypertension; degenerative disc disease of the cervical spine; and status-post lumbar discectomy and fusion (20 CFR 404.1520(c) and 416.920(c));

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

6. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a),[1] The claimant is further limited such that she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and she cannot climb ladders/ropes/scaffolds. Additionally, the claimant is limited such that while remaining at the workstation, she would need to alternate to sitting for two minutes after every one hour of standing or walking and needs to alternate to standing for two minutes after every one hour of sitting;

7. The claimant is capable of performing past relevant work as a claims clerk, D.O.T. 241.362-010, sedentary exertional level, SVP 4.This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965);

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8.  The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2013, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

Tr. at 13-28.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on July 2, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 28. The ALJ also determined that, for the application for supplemental security income, filed on July 2, 2014, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. Tr. 28.

## ANALYSIS

Plaintiff asserts three points of error: (1) the ALJ failed to properly address and evaluate treating opinions of record, resulting in an RFC finding unsupported by substantial evidence; (2) the ALJ improperly rejected medical opinions and failed to obtain clarification from medical doctors when necessary, thereby creating an evidentiary gap in the record, and failing to further develop the record; and (3) the ALJ improperly found that Plaintiff is capable of past work. *See* ECF No. 9-1 at 2.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

### I.   The ALJ Properly Considered and Weighed The Medical Evidence.

Plaintiff's first and second points both involve the ALJ's consideration of the medical opinion evidence, and the RFC formulated therefrom. As such, the Court will analyze these points

5

collectively. Upon review of the record, the Court finds the ALJ discussed the evidence of record, granting appropriate weight to the opined limitations to the extent they were supported by the evidence, and discharged his duty to formulate an RFC finding that properly accounted for all of Plaintiff's credible limitations, as supported by the record. It was the ALJ's duty to assess all of the evidence, including the medical opinion evidence, resolve any inconsistencies, and formulate an RFC finding that reflected all of Plaintiff's credible limitations. *See Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision," because he is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

The record reflects that Plaintiff had a laminectomy and fusion surgery in July 2008. Tr. 264-69, 294-99. Following her surgery, examination results showed normal strength, intact sensation, and negative straight leg raising. Tr. 278, 280, 282, 284, 286. Plaintiff was returned to work in October 2008. Tr. 282. Plaintiff first argues that the ALJ improperly rejected opinions by treating physician Komal Chandan, M.D. ("Dr. Chandan"), and consultative examiner Michael Rosenberg, M.D. ("Dr. Rosenberg"), and failed to recontact Dr. Chandan, thus creating an evidentiary gap in the record. *See id*. at 15-27. As noted above, Dr. Chandan was Plaintiff's treating physician.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling

weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g.*, *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions").

Although Plaintiff claims Dr. Chandan treated her from between February 15, 2011 to February 2, 2017 (*see* ECF No. 9-1 at 9), the ALJ noted that Dr. Chandan treated Plaintiff sporadically between 2014 and 2015 and his treatment notes did not support his extreme opinion. Tr. 26. In a February 2014 note releasing Plaintiff to work in April 2014, Dr. Chandan opined that Plaintiff had permanent work restrictions for three hours per day for a maximum of four days, and

7

she needed to get up and move every hour on the hour. Tr. 627. The ALJ properly noted that Dr. Chandan's treatment notes failed to support such severe limitations. Tr. 26. In fact, Dr. Chandan's January 2014 notes show that Plaintiff was doing well clinically, her blood pressure was well-controlled, and examination notes were normal. Tr. 516. Dr. Chandan only recommended that Plaintiff lose weight and avoid lifting over 10 pounds and performing excessive bending, pulling, or pushing. Tr. 517. The ALJ also noted that Plaintiff's examinations were virtually normal. Tr. 25. The record demonstrates negative straight leg raising, intact sensation, and normal gait, normal upper and lower extremity strength, and normal deep tendon reflexes. Tr. 436, 443-44, 446, 449, 451-52, 454-55, 459, 461-62, 471-72, 474, 477, 479-80, 482-83, 487, 489-90, 505, 555, 557-60, 562, 565, 567-68, 569-70. Thus, Dr. Chandan's opinion was unsupported by his own treatment notes, and it was inconsistent with subsequent medical evidence. Supportability and consistency are valid factors in deciding the weight accorded to any medical opinion. *See Michels v. Astrue*, 297 F.App'x 74, 76 (2d Cir. Oct. 30, 2008).

The ALJ also noted evidence showing that medication reduced Plaintiff's discomfort. Tr. 24-25. Eugene Gosy, M.D. ("Dr. Gosy"), provided pain management treatment to Plaintiff from April 2009 to April 2014. Tr. 315-41, 353-60, 381-401, 432, 435. On April 9, 2014, Dr. Gosy noted that Plaintiff "utilizes Hydrocodone 7.5 mg q.i.d., Relafen 500 mg b.i.d., Soma 350 mg t.i.d." Tr. 435. He also noted that Plaintiff's medication was helpful and well tolerated without adverse effects. *Id*. Hussain Imam, M.D. ("Dr. Imam"), of Baymeadows Primary Care, Inc., treated Plaintiff from May 22, 2014 to January 27, 2015. Dr. Imam's notes also show that medication was beneficial. Tr. 448, 451, 476, 479, 567. On April 23, 2014, Plaintiff requested medication refills for low back pain. Tr. 454, 482, 569. Dr. Imam next examined Plaintiff on May 22, 2014, for low back pain and hypertension. Tr. 451, 479, 567. She stated the narcotic pain medication provided

8

some relief of low back pain, but she threw the bottle away and wanted to discontinue them based upon bad news reports. Tr. 451, 479, 567. Plaintiff moved back to New York from Florida and sought treatment at Medical Care of Western New York over the period from February 2015 to February 2016. Tr. 574-620. She reported the medication decreased her pain and increased her functioning. Tr. 577, 583, 587, 592, 596, 603, 606, 614. The records note that medication also reduced her anxiety symptoms, and she reported no adverse medication side effects. Tr. 577, 583, 587, 592, 596, 599, 603, 606, 614.

Thus, the ALJ properly considered that a claimant's medical condition improved with treatment. *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's residual functional capacity); *Shaffer v. Colvin*, No. 14-745, 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (explaining ALJ properly considered "that plaintiff's treatment for her condition was essentially routine and conservative, consisting of medication management and physical therapy").

The ALJ also properly considered Plaintiff's activities of daily living. *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)). Plaintiff's activities also demonstrate functional abilities in excess of Dr. Chandan's extreme opinion. Significantly, Plaintiff worked at the substantial gainful activity level from October 2016 to December 2016. Tr. 19, 200, 202. Other evidence shows that Plaintiff prepared meals, took her daughter to school, drove, went out alone, went shopping, managed money, watched television most of the day, socialized using the telephone or computer, and

attended church. Tr. 25, 221-25. Dr. Gosy noted that Plaintiff worked, and she could maintain her activities of daily living. Tr. 435. These activities provide further support for the ALJ's RFC. *See e.g. Wavercak v. Astrue*, 420 F.App'x 91, 94 (2d Cir. 2011); *Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. Apr. 1, 2008); *Donnelly v. Barnhart*, 105 F. App'x 306, 308 (2d Cir. Jul. 1, 2004) (same); *see also, Pennock v. Comm'r of Soc*. Sec., 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016).

Finally, there was no impermissible gap in the record, and the ALJ had no duty to recontact Dr. Chandan. An ALJ's "duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record." *Morris v. Berryhill*, 721 F.App'x 25 (2d Cir. 2018). The trigger for recontacting a treating physician is whether the record is sufficient to assess the claimant's RFC without the treating physician's opinion. *See Jasen v. Comm'r Soc. Sec.*, No. 16-cv-6153P, 2017 WL 3722454, at * 12 (W.D.N.Y. Aug. 29. 2017) (unpublished) (citing *Kunkel v. Comm'r Soc. Sec.*, 2013 WL 4571840, at *2 (W.D.N.Y. Aug. 29, 2017) (unpublished) ("the relevant inquiry is whether the record was sufficient to support the ALJ's RFC assessment")).

The record in this case contains an abundance of medical evidence for the ALJ to make a disability determination, and no further development was necessary. "The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to recontact a treating physician. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally

10

inconsistent." *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. Oct. 25, 2012). Based on the foregoing, the ALJ properly discounted Dr. Chandan's opinions. *See Hill v. Berryhill*, No. 6:17-cv-06532, 2019 WL 144920, at *5 (W.D.N.Y. Jan. 9, 2019) (The ALJ has the discretion "to discount a treating physician's [opinion] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." (internal citations and quotations omitted)).

With respect to Dr. Rosenberg's opinion, the ALJ noted that he assessed moderate restrictions with activities involving prolonged standing, walking, squatting, kneeling, bending, and lifting; and that those limitations were consistent with his objective findings. Tr. 26, 499. Dr. Rosenberg examined Plaintiff for a disability determination on April 9, 2015. Tr. 497-500. She reported achy back pain with radiation that worsened with walking, standing, sitting, and bending. Tr. 497. Plaintiff stated that she could cook once or twice weekly and she watched television and attended church, but she did not clean, do laundry, or go shopping because standing too long caused back pain. Tr. 498. Although Dr. Rosenberg noted a slow and deliberate gait during Plaintiff's disability examination (Tr. 498), the evidence in her treatment record routinely demonstrates normal gait (Tr. 436, 443-44, 446, 449, 451-52, 454-55, 459, 461-62, 471-72, 474, 477, 479-80, 482-83, 487, 489-90, 505, 555, 557-60, 562, 565, 567-68, 569-70). She could squat to 30% of full, she had normal station, and she used no assistive device. *Id*. Plaintiff did not need help changing for the examination or maneuvering the examination table; and she could rise from a chair without difficulty. *Id*. Plaintiff had near full range of motion in her cervical spine, with pain; and slightly reduced strength but no muscle atrophy and no sensory abnormalities. Tr. 498-99. She had reduced thoracic and lumbar range of motion, but no sacroiliac joint or sciatic notch tenderness, no spasm, no scoliosis or kyphosis, or trigger points. Tr. 499. Straight leg raising was

positive at 30 degrees on the right with radiation, but negative on the left. *Id*. Her lower extremity strength was slightly reduced, but she had no muscle atrophy or sensory abnormality. *Id*. Dr. Rosenberg opined that Plaintiff had moderate restrictions for activities involving prolonged standing, walking, squatting, kneeling, bending, and lifting. *Id*.

The ALJ's RFC finding adequately accounted for Plaintiff's functional limitations, including postural difficulties and the need to alternate positions. Additionally, despite Plaintiff's claim that there is no support for the ALJ's RFC finding that she needed to change positions from sitting or standing after one hour, Dr. Chandan opined that Plaintiff needed to get up every hour. Tr. 627. In sum, the ALJ considered each of the medical opinions in the record and explained which portions of the opinions he rejected. The ALJ acted within his discretion when he afforded different degrees of weight to the opinions and medical evidence in the record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (The ALJ "was entitled to weigh all of the medical evidence available to make an RFC finding that was consistent with the record as a whole."). An ALJ considers medical opinions as to a claimant's level of functioning, but he must ultimately reach an RFC assessment based on the record as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Despite Plaintiff's assertions to the contrary, substantial evidence supported the ALJ's RFC, and the Court finds no error in the ALJ's assessment of the medical opinion evidence.

The evidence in this case shows that Plaintiff had back surgery, and she received treatment, primarily for ongoing back pain and high blood pressure that were controlled with medication. Despite Plaintiff's pain complaints, examinations were largely normal, she engaged in substantial gainful work activity, medication reduced her pain, and her activities of daily living reflect abilities

consistent with the ALJ's RFC finding. Plaintiff failed to carry her burden to show that she cannot perform the RFC as found by the ALJ. *See Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009). Based on the foregoing, the Court finds no error in the ALJ's assessment of the medical opinion evidence or his RFC finding.

## II.     The ALJ Properly Determined Plaintiff Could Perform Past Relevant Work.

Plaintiff argues that the ALJ improperly found her capable of performing her past relevant work. *See* ECF No. 9-1 at 27-28. Plaintiff is incorrect. As an initial matter, Plaintiff has the burden to prove disability throughout the first four steps of the sequential evaluation process, and past relevant work is assessed at step four. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520, 404.1560, 416.920, and 416.960.

Here, the ALJ assessed the evidence taken as a whole and formulated an RFC finding that reflects all of Plaintiff's functional limitations, as supported by the evidence. The ALJ then compared the physical and mental demand of Plaintiff's past relevant work and found that she could perform it as actually and generally performed according to the Dictionary of Occupational Titles ("DOT"). Tr. 26-27. The ALJ also enlisted the assistance of the VE. A series of hypothetical questions reflecting Plaintiff's age, education, past work experience, and RFC were presented to the VE. Tr. 47-50. "[T]he ALJ properly declined to include in his hypothetical question symptoms and limitations that [the ALJ] had reasonably rejected." *Priel v. Astrue*, 453 F.App'x 84, 87-88 (2d Cir. Dec. 23, 2011) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)); *see also Carvey v. Astrue*, 380 F.App'x 50, 54 (2d Cir. Jun. 7, 2010).

Responding to the hypothetical questions, the VE testified that the individual could perform Plaintiff's past relevant work both as generally and actually performed. Tr. 48-50. The claimant has the burden to show an inability to perform the claimant's past relevant work as actually or

generally performed. *See Reices-Colon v. Astrue*, 523 F.App'x 796, 798 (2d Cir. May 2, 2013). If Plaintiff can perform her past relevant work, either as she actually performed it or as the position is generally performed in the national economy, she is not disabled within the meaning of the Act. *See* 20 C.F. R. §§ 404.1520(f), 404.1560(b), 416.920(f), and 416.960(b). Plaintiff failed to meet her burden of proof, and the Court finds no error in the Commissioner's decision.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE